O

# United States District Court
# Central District of California

| | |
|---|---|
| MONSTER FILM LIMITED, a corporation,<br><br>Plaintiff,<br><br>v.<br><br>GALLOPING ILLUSIONS PTY LTD.; CARLOS ALPERIN; ROHAM GHODSI; CHRISTIAN MARTINEN; and DOES 1–100, inclusive,<br><br>Defendants. | Case No. 2:16-cv-01414-ODW(KSx)<br><br>**AMENDED ORDER DENYING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT [113-116]; GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM [150]; AND GRANTING THIRD-PARTY DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM [153]** |

## I.  INTRODUCTION

This is a breach of contract and fraud case involving an alleged scheme to defraud Plaintiff, Monster Film Limited ("Monster"), of a $200,000 investment intended to finance the production of three movies.

For the reasons discussed below, the Court: (1) **DENIES** Defendants' Joint Motion for Summary Judgment (ECF Nos. 113–116); (2) **GRANTS** Plaintiff's Motion to Dismiss Defendant Martinen's Counterclaim (ECF No. 150); and (3) **GRANTS** Third-Party Defendant Maxim Koslov's ("Koslov") Motion to Dismiss Martinen's Third-Party Complaint for failure to state a claim.  (ECF No. 153).

## II. BACKGROUND

**A. Factual Background**

On April 11, 2013, Monster, a film production company, and Galloping Illusions Pty Ltd ("GI"), executed an Investment Agreement, Term Sheet, and Escrow Agreement whereby GI agreed to finance film production. (Second Amended Complaint; ("SAC") ¶¶ 11–13; ECF No. 98.) Under these contracts, GI agreed to provide $1,203,920 in funding, which it would deposit into an escrow account maintained by Defendant Christian Martinen ("Martinen"). (*Id*. ¶ 13.) In return, Monster agreed to produce three films and deposit $200,000 into the escrow account. (*Id*. ¶¶ 12–14.)

On or about April 15, 2013, Highcorp Worldwide LLP ("Highcorp") a lender, transferred $200,000 into Martinen's escrow account accompanied by a note that the transfer was "on behalf of Monster Film Ltd according to escrow agreement." (*Id*. ¶¶ 15–16; Ex. 4.) Martinen confirmed the receipt of the funds in a letter addressed to GI. (*See* SAC Ex. 5.) Thereafter, Monster purchased equipment and hired crews to begin film production. (SAC ¶ 23.) However, GI failed to fund the escrow account, causing Monster to terminate the contracts and request the return of its $200,000 investment. (*Id*. ¶ 28.) After much "back and forth," Carlos Alperin ("Alperin") and Roham Ghodsi ("Ghodsi"), the principals of GI, eventually entered into a Deed of Release Agreement with Monster, wherein they agreed to repay Monster's $200,000 deposit. (*Id*. ¶ 30.) To date, Defendants have only repaid Monster $49,975 of its $200,000 deposit. (*Id*. ¶¶ 30–31.)

In February 2016, Monster filed this action, alleging that Martinen, Galloping Illusions, Alperin, and Ghodsi conspired to convert Monster's $200,000 deposit. (*Id*. ¶ 50.) Monster alleges that Martinen furthered the conspiracy by using "his reputation and name as an attorney at law in serving as a 'sham' escrow agent in the transaction designed to elicit money from [Monster], accepting money into [Martinen's] bank

account and then disposing of [Monster's] money how they saw fit for their own benefit and use." (*Id*. ¶ 43.)

**B.     Procedural Background**

In October 2016, the Court determined that it lacked subject matter jurisdiction over this action because Monster is an alien plaintiff, and GI, Alperin, and Ghodsi are alien defendants. (ECF No. 50.) To cure this defect, Monster dismissed these three parties, leaving Martinen as the sole defendant. (ECF No. 53.) On September 20, 2017, the Court granted Monster's Motion to Amend its First Amended Complaint (ECF No. 97), and Monster added Defendants Robert Wall ("Wall"), and Markett, Inc. (SAC ¶¶ 4–6.) Wall is the chief executive of Markett, Inc. (Plaintiff's Statement of Genuine Issues of Material Fact ("SGIF") ¶ 17; ECF No. 143-1.) Monster alleges that Martinen shared or transferred the "ill-gotten gains" to Wall and Markett, Inc. and that they were all "unjustly enriched by money that didn't belong to them." (SAC ¶¶ 21–22.)

Monster asserts the following causes of action against Martinen, Wall, and Markett, Inc. (collectively "Defendants"): (1) conspiracy to commit fraud; (2) conversion; (3) unjust enrichment; and (4) money had and received. (*See generally*, SAC.)

### III.     LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues

of fact and defeat summary judgment. *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). Where the moving and nonmoving parties' versions of events differ "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the nonmoving party.'" *Scott*, 550 U.S. at 378 (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).

## III. EVIDENTIARY OBJECTIONS

Each party filed evidentiary objections to various evidence submitted by the opposing party. Many of the objections are to "facts" which in reality are not material to the dispute between the parties. Indeed, the vast majority of the factual disputes addressed are completely irrelevant to the determinative issues in these motions for summary judgment. Apparently little thought, if any, went into limiting the disputed facts to facts material to the summary judgment discussion. Instead, the court is left to the task of culling through objection after objection in search of something relevant. In addition, many of the so-called disputed facts refer to the same exhibit used to support the fact, with no explanation given as to what the dispute is or how the supporting evidence is to be interpreted. The court therefore declines to rule on the objections.

## III. DISCUSSION

**A. Defendants' Joint Motion for Summary Judgment**

Defendants move for Summary Judgment against Monster, arguing that:
- (1) Monster does not have standing to bring this lawsuit;
- (2) The statute of limitations for the claims has expired;
- (3) Monster cannot prove fraud or damages to prove its claim for conspiracy;

(4) Monster cannot prove title to the $200,000 to prove its claim for conversion;

(5) Monster's claim for unjust enrichment fails because it is not a separate cause of action, but a "general concept" underlying various remedies; and

(6) Monster's claim for Money Had and Received fails because the money belonged to Highcorp, not Monster.

(*See generally* Defendants' Joint Motion for Summary Judgment ("MSJ") 1, ECF No. 114.)

Martinen claims that he was not aware of the Escrow Agreement between Monster and GI when he received the funds into his attorney trust account. (*Id.* 3.) According to Martinen, after the $200,000 was deposited, he contacted Ghodsi of GI to enquire about it. (*Id.*) Ghodsi allegedly told Martinen that the money was from investors GI was working with to fund the project with Markett Inc., but that the agreements with Monster and Highcorp were confidential. (*Id.*) Thereafter, Martinen dispersed the funds according to Wall's directions: $54,000 to GI, $16,000 to Martinen, and $130,000 to Markett Inc. (*Id.*) Martinen contends that "at no time did [he], Wall, [or] Markett Inc. intend to defraud Monster of the Loan funds, and [that he] had no[] reason to believe the $200,000 … was not to be used as it was until September 3, 2014." (*Id.*) On that day, Martinen received a call from Maksim Kozlov, the principal of Monster, demanding a return of the $200,000. (*Id.*)

### 1. Standing

The Constitution requires that a plaintiff suffer an "injury in fact" before he or she can bring a lawsuit. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "An injury in fact is an invasion of a legally protected interest that is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Preminger v. Peake*, 552 F.3d 757, 763 (9th Cir. 2008) (citations and internal quotation marks omitted). However, a plaintiff can base standing on the risk of a

future injury only if such injury is "certainly impending." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013). The mere *potential* for future harm is insufficient to confer standing. *Id.*

Defendants argue that Monster lacks standing to bring this lawsuit because (1) it cannot show that it has suffered injury, and (2) that it cannot prove that it has authority to bring this lawsuit. (MSJ 6.) To maintain standing on a claim, a plaintiff must have "suffered an injury, that the injury was caused by the defendant's illegal conduct, and that his injury could be redressed by a favorable outcome to the lawsuit." *Thomas v. Bank of Am. Home Loans*, No. SACV 11-1832-JST(VBK), 2012 WL 13019950, at *5 (C.D. Cal. Apr. 5, 2012) (quoting *Seckler v. Star Enterprise*, 124 F.3d 1399, 1406 (1997)).

### a) Actual Injury

Defendants argue that because Monster obtained the $200,000 from a loan by Highcorp, a company that has since dissolved[1], Monster has not suffered an injury. (MSJ 6.) Defendants contend that Monster has not produced evidence that the loan was assigned, or that it has any obligation to pay the funds back to Highcorp. (*Id.*) As a result, Defendants claim that Monster has not suffered any injury and cannot seek damages. (*Id.*) On the other hand, Monster argues that whether the money it used for the escrow deposit was from a loan is irrelevant for the purposes of determining liability. (Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("MSJ Opp'n") 5, ECF No. 143.) Monster argues that the money that was transferred and received by Martinen "belonged to Monster Film regardless of its original source." (*Id.* 6.)

---

[1] In support of its Joint MSJ, Defendants request that the Court take judicial notice of a document from The Registrar of Companies for England and Wales, stating that Highcorp was dissolved on August 11, 2015. (Request for Judicial Notice, Ex. 1; ECF No. 116-1.) The Court takes judicial notice of the document, but not the facts contained therein. *See Lee v. City of Los Angeles,* 250 F.3d 668, 690 (9th Cir. 2001) (stating that judicial notice of public records is limited to the existence of the documents, not the truth of their contents).

6

The Court agrees with Monster. Even if Highcorp has since dissolved, Monster obtained the loan with the intent to produce movie projects with GI. The fact that Monster obtained the funds from a third party is of no consequence. Pursuant to its contracts with GI, Monster deposited $200,000 into Martinen's escrow account as one of the conditions of future financing. (MSJ Opp'n 5.) When GI failed to perform under the contracts, Monster was entitled to return of the funds. Accordingly, Monster has alleged actual injury.

### b) **Capacity to Bring Suit**

Defendants argue that Monster lacks capacity to sue or be sued here in the United States and contends that it has not produced admissible evidence to prove that Kozlov has authority to litigate this action. (MSJ 7.) A corporation's capacity to sue or be sued is determined by the law under which it was organized. Fed. R. Civ. P. 17(b)(2). Monster argues that Defendants have not provided authority that prevents a Cyprus corporation from participating in a lawsuit as a plaintiff. (MSJ Opp'n 7.) Further, Monster contends that it produced at least two powers of attorney to Defendants: one dated March 22, 2013 to Kozlov, and a second one to Monster's counsel, Natalya Byzova, granting authority to settle this lawsuit. (Byzova Decl. ¶ 8.)

For the above reasons, the Court **DENIES** Defendants' Motion as to the claim that Monster lacks standing.

### 2. **Statutes of Limitations**

Defendants argue that Monster failed to timely file (1) its claim for money had and received against Defendants Wall and Martinen, and (2) the remaining claims against Wall. (MSJ 8.)

### a) **Money Had and Received Claims**

Defendants contend that a two-year statute of limitations applies to Monster's claim of Money Had and Received, and that Monster's Complaint was filed after the statute had run. Monster, on the other hand, argues that a four-year statute of limitations applies to this claim because it is founded upon an instrument in writing.

The first issue the Court determines is whether Monster's claim for Money Had and Received is based on a written contract. Under California Code of Civil Procedure ("CCP") § 337, the statute of limitations for an action based upon the rescission of a contract grounded in fraud or mistake is four years. *See* CCP § 337(3). In contrast, an action based upon a non-written contract is two years. CCP § 339(3). Under both CCP §§ 337 and 339, the time begins to run "from the date upon which the facts that entitle the aggrieved party to rescind occurred." *Id.*

Monster argues that the Escrow Agreement under which it transferred the money to Martinen constitutes a sufficient writing, and therefore, a four-year statute of limitations applies. (MSJ Opp'n 8.) Monster cites to a California Supreme Court case, *Amen v. Merced County Title Co.*, 375 P.2d 33, 35 (1962), for support. In *Amen*, the court held that a defendant escrow holder breached a written contract when it failed to comply with escrow instructions written on an escrow document after the sale of a house, even though the defendant had not signed the form. *Id.* at 34–35. The court concluded that the four-year statute of limitations applied because "[i]f the escrow instructions are in writing and the escrow holder accepts them or if the escrow holder prepares the instructions, offers to perform them, and the buyer and seller accepts the offer, an action for failure to comply with the instructions is on a written contract." *Id.* at 35. "A longer period of limitations applies to actions on written contracts than to actions on oral contracts, since the writing is clear evidence in permanent form of the terms of the agreement." *Id.*

Here, Highcorp deposited $200,000 into Martinen's escrow account with a notation that the money was "on behalf of … Monster Film Ltd according to escrow agreement." (Martinen Decl. Ex. 6.) Martinen acknowledged his receipt of the funds in writing in an email he sent to Ghodsi. (Compendium of Evidence In Support of Defendants' Joint Motion for Summary Judgment ("Compendium") Ex. 4; ECF No. 116-8.) Although Martinen claims that he did not learn about the existence of Monster or Highcorp until he received this wire, he was aware of the written

instructions contained on the escrow transmission form, that explicitly stated that the funds were to be held for a film company "according to escrow agreement." Therefore, Monster's action for its Money Had and Received claim is on a written contract.

Next, the Court must determine when the statute of limitations began to accrue. As stated above, the time begins to run "from the date upon which the facts that entitle the aggrieved party to rescind occurred." CCP § 339(3). Defendants argue that the statute of limitations began to accrue on July 10, 2013—90 days after the execution of the Escrow Agreement, the deadline for GI to deposit $1,203,920 under the contracts. (MSJ 8.) However, Monster argues that its claim for Money Had and Received accrued on or about September 4, 2014, when it contacted Martinen and demanded that he return the money, and he refused. (MSJ Opp'n 9.) Monster claims that it justifiably believed that its escrow deposit was safe during the time it was attempting to resolve its problems with GI, and therefore it had no reason to know that Martinen would breach until he refused to return the money. (*Id.*) Defendants counter that Monster's duty to investigate occurred on the date GI breached the contract, because Monster knew or should have known that GI had misappropriated the funds. (Reply to Monster's Opposition ("Reply") 3, ECF No. 154.) Viewing the facts in the light most favorable to Monster, the Court finds that the Statute of Limitations began to accrue on September 4, 2014 because Monster reasonably relied upon the excuses of GI, and agreed to grant an extension in hopes that the financing for the movie projects would materialize. (MSJ Opp'n 9.)

Furthermore, it is important to note that as an escrow agent, Martinen was in a fiduciary relationship with the parties. "[I]n cases involving a fiduciary relationship, facts which would ordinarily require investigation may not excite suspicion and the same degree of diligence is not required." *Alfaro v. Community Housing Imp. Sys. & Planning Ass'n, Inc.*, 171 Cal. App. 4th 1356, 1394 (Ct. App. 2009). As the *Amen* court reasoned, when a late discovery of fraud is at issue, it would be manifestly

unjust to hold that Monster's claim is barred by the statute of limitations when its failure to file its claim may have resulted from Defendants' fraudulent conduct. *See Amen*, 375 P.2d at 37.

As an escrow holder, Martinen had a duty to both parties, and was obligated to clarify any conflicting escrow instructions. *See St. Paul Title Co. v. Meier*, 181 Cal. App. 3d 948, 952 (Ct. App. 1986). "In the event of a conflict or apparent error in instructions, the escrow holder is obliged to take corrective steps before obeying questionable instructions." *Kirk Corp. v. First American Title Co.*, 220 Cal. App. 3d 785, 807 (Ct. App. 1990). Defendants claim that Martinen was not aware of Monster or Highcorp when he received the funds, and that he distributed the money solely based on information and instructions he received from Ghodsi and Wall. (MSJ 2–3.) The Court notes that around this same time frame, Ghodsi and his company GI was to provide financing to Wall / Markett in the amount of $500,000. Ghodsi clearly was aware that the $200,000 Martinen reported receiving was not part of the $500,000 funding agreement. And if Martinen was aware of this separate transaction, then the $300,000 disparity in funds should have alerted him that this was not part of Ghodsi's transaction and it was irresponsible for Martinen to have taken instructions from Ghodsi regarding the disposition of the $200,000.

If Martinen was genuinely in the dark about the origin of the funds and what they were for, surely he should have done his due diligence to inquire with the depositing party, Monster (or Highcorp), for clarity. Or at the least, Martinen could have requested a copy of the Escrow Agreement referenced in the funds deposited into escrow transmission form note accompanying the transmittal of the funds. Therefore, it was reasonable for Monster to believe that Martinen would have handled the funds deposited into escrow with due care before dispersing it contrary to the note in the escrow document.

Accordingly, Defendants' Motion on the basis of the Statute of Limitations as to Monster's claim of Money Had and Received Claim is **DENIED**.

### b) Statute of Limitations on Claims for Conspiracy, Conversion & Unjust Enrichment

Defendants also argue that Monster failed to timely file its complaint for conspiracy, conversion, and unjust enrichment against Wall and Markett Inc. (MSJ 9.) Monster, on the other hand, argues that the "relation back" doctrine applies here, and thus, Wall and Markett Inc. were properly identified as Doe defendants. (MSJ Opp'n 10.)

"Where a complaint sets forth, or attempts to set forth, a cause of action against a defendant designated by fictitious name and his true name is thereafter discovered and substituted by amendment, he is considered a party to the action from its commencement so that the statute of limitations stops running as of the date of the earlier pleading." *Austin v. Massachusetts Bonding & Ins. Co.*, 56 Cal. 2d. 596, 599 (1961). "Relation back" as to persons identified as "Doe" defendants applies both to the claim set forth in the original complaint and any claims set forth in the amended complaint, provided they are based on the "same general set of facts" as the original. *Id.* at 600.

Here, Monster alleges that it was unaware to the true name and capacity of Wall and Markett when it filed its original Complaint in February 2016, but substituted the true names in the SAC filed in September 2017. (MSJ Opp'n 10.) The statute of limitations for conspiracy based on conversion is three years. *Maheu v. CBS, Inc.*, 201 Cal. App. 3d 662, 673 (1988) (citing CCP § 338, subd. (3)). However, while the conspiracy exists, the statute of limitations does not commence to run until the "cessation of the wrongful acts committed in the furtherance of the conspiracy." *Maheu*, 201 Cal. App. 3d at 673. As discussed above, at the very earliest, Monster's action for conspiracy and conversion began to accrue when it became aware that Martinen was not holding its deposit as a fiduciary escrow agent, but had dispersed the money to himself, Wall, and Ghodsi in September 2014. This action was filed in February 2016, well within the statutory limitations period for the underlying claims.

Accordingly, the Court **DENIES** Defendants' Motion for Summary Judgment based on a failure to timely file.

### 3. Conspiracy

Defendants claim that they are entitled to Summary Judgment because Monster cannot show the formation and operation of a conspiracy and because Monster suffered no damages. (MSJ 10.) Monster argues that the evidence and reasonable inferences here create genuine issues of material fact precluding Defendants from Summary Judgment. (MSJ Opp'n 11.)

In their Motion for Summary Judgment, Defendants spend a great deal of time explaining the (mostly irrelevant) history of the business relationship between Martinen, Wall, Markett Inc., and the now dismissed defendants GI, Ghodsi, and Alperin. (*See* MSJ 11–16.) To summarize, Martinen introduced Wall, the principal of Markett Inc., to Ghodsi, the principal of Galloping Illusions. (*Id.* 11.) Markett Inc. acquired and sold luxury clothing and accessories, and needed an investor to start building its "online sales platform." (*Id.*) Markett and GI entered into a "$500,000 credit facility" in March 2013. (*Id.*) To receive the funds, Wall had to wire $7,000 to an Australian bank to pay for bank fees, which it did. (*Id.* 12.) Defendants claim that they received $200,000 of this "credit facility" fund on April 15, 2013—however, this is the money that Monster deposited into Martinen's escrow account. (*Id.*) Defendants go on at length discussing a separate agreement that Markett Inc. and GI entered into, attempting to tie the money that was Monster's escrow deposit to a legitimate deal. (*See* MSJ 14–15.) According to Defendants, Martinen did not know about Monster until the escrow deposit was received, and that Ghodsi allegedly informed him that the funds were from "confidential" investors for Markett Inc. (*Id.* 15.) Defendants claim that Martinen "accepted his word as he had no reason at that time to distrust him, Alperin, or GI." (*Id.*) Defendants claim that "[t]hey too were, unfortunately, … taken for a ride." (*Id.* 16.)

The elements of a civil conspiracy are: (1) the formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting. *Mosier v. So. Cal. Physicians Ins. Exchange*, 63 Cal. App. 4th 1022, 1048 (1998). Specifically, the Court finds that the following evidence creates genuine issues of material fact to the issue of conspiracy:

(i) Defendants are beneficiaries of the conspiracy—Martinen, Wall, and Ghodsi split the money (Plaintiff's Statement of Genuine Issues of Material Fact ("SGIF") ¶¶ 23, 25; ECF No. 143-1.);

(ii) Martinen was put on notice that the wire sent by Monster was pursuant to the specific escrow instruction: "on behalf of Monster" (SGIF ¶¶ 12–14; Martinen Decl. ¶ 20; ECF No. 116-10.)

(iii) Martinen received $16,000 exactly as the Escrow Agreement between Monster and GI provided for, but Martinen claims not knowing of the Agreement (SGIF 8, Ex. 8; ECF No. 118-8.); and

(iv) Defendants contradict themselves by claiming that the $16,000 was a payment for Martinen's attorney fee for work performed for Markett, Inc., but in a letter from Ghodsi, the fee is described as escrow services. (Statement of Uncontroverted Facts and Conclusions of Law ("UFCL") ¶ 53; ECF No. 115; Wall Decl. ¶ 20, Ex. 8; ECF No. 118-8.)

As to the first and second prongs of conspiracy, Monster argues that the main evidence is "the way GI, Martinen, and Wall divided the $200,000 escrow deposit. (*Id.* 12.) Monster alleges that Wall, who received the "lion's share" of the money—$130,000—"blew through thousands of dollars in a matter of weeks." (*Id.*) Monster claims that the genuine dispute is created by the fact that Martinen was on notice that the money was pursuant to the message Monster placed on the escrow form, but that Martinen dispersed the funds in a manner inconsistent with those instructions. (*Id.*) Martinen claims that he asked Ghodsi about it, but believed that the money was from a "confidential" investor. (MSJ 15.) This statement is inconsistent with the facts

because the escrow form clearly states that the money was "on behalf of Monster Films." (Kozlov Decl. Ex. 10.)

In regards to the element of damages, Defendants fall back on their argument for lack of standing to contend that Monster has no damages because the funds came from a loan that they claim is void. (MSJ 17.) However, as stated above, this argument lacks merit. Additionally, Monster claims that it invested money in anticipation of producing the films and that it has lost its reputation with Highcorp and others in the community who knew that Monster failed to repay the loan. (MSJ Opp'n 17.) Secondly, Monster borrowed the funds from Highcorp and was fully entitled to the possession and use of those funds. Even if, for the sake of argument, Monster is never called upon to repay that loan, then the money belongs to Monster, unencumbered.

For the above stated reasons, the Court **DENIES** Defendants' Motion for Summary Judgment as to Monster's Conspiracy claim.

### 4. Conversion

Defendants claim that Monster's claim for conversion fails because Monster cannot prove title to the $200,000, nor wrongful conduct by Defendants, and has not suffered damages. (MSJ 17.) Monster moves for partial summary judgment on this claim, arguing that there is no issue of material fact and that it is therefore entitled to judgment as a matter of law. (MSJ Opp'n 17.) The Court agrees.

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession to the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015). "A conversion can occur when a willful failure to return property deprives the owner of possession." *Fearon v. Dept. of Corrections*, 162 Cal. App. 3d 1254, 1257 (1984). Conversion is a strict liability tort. *Los Angeles Fed. Credit Union v. Madatyan*, 209 Cal. App. 4th 1383, 1387 (2012). The foundation of the

action rests neither in the knowledge nor the intent of the defendant. *Id.* Instead, the tort consists in the breach of an absolute duty. *Id.* The act of conversion itself is tortious; therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial. *Id.*

Defendants argue that Monster's conversion claim fails because Monster was never the holder of "paramount title, owner, or entitled to possession" when it made its demand for funds. (MSJ 18.) In its defense, Monster correctly contends that Defendants "cite[] not a single authority in support of this nonsensical argument as to why anybody would not have title to the money that had been loaned … to them." (MSJ Opp'n 21.) Instead, Defendants attempt to persuade the Court that the funds were to be returned to Highcorp because Monster "never owned or was entitled to the funds." (Reply 8.) As stated above in the Court's standing analysis above, this is a ridiculous argument.

Defendants further claim that they held superior title to the funds based on the contract between Markett and GI, and that they were unaware of the contract between GI and Monster. (*Id.*) Defendants fail to explain, however, how their contracts with GI entitle them to Monster's escrow funds. Defendants simply conclude that they are entitled to the funds because "there were contracts in place here, [and] any action by Martinen would be done based on contract." (MSJ 18–19.) Contract or no contract, "any act of dominion wrongfully exerted over the personal property of another inconsistent with the owner's rights thereto constitutes conversion." *Plummer v. Day/Eisenberg, LLP*, 184 Cal. App. 4th 38, 50 (2010). It is of no consequence if Defendants "were [also] misled" by GI. (MSJ 18.) The funds were obtained by Monster for purposes of business it intended to conduct with GI, Defendants dispossessed Monster of these funds when Martinen distributed them, and Monster suffered damages. Accordingly, the Court **GRANTS** Monster's Motion for Partial Summary Judgment on the claim of conversion.

///

### 5. Unjust Enrichment

Defendants claim that they are entitled to summary judgment on Monster's unjust enrichment claim because it is not an independent cause of action. (MSJ 19.) Unjust enrichment is not a cause of action, or even a remedy, but rather a general principle, underlying various legal doctrines and remedies' it is synonymous with restitution. *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004).

Here, the Court dismissed Monster's breach of contract claim against Defendants because Monster could not produce the Escrow Agreement signed by Martinen. (ECF No. 39.) When a contract fails for some reason, unjust enrichment can be asserted under an action in quasi-contract, conversion, or fraud. *McBride*, 123 Cal. App. 4th at 387. Because Monster has alleged sufficient facts to claim conversion and fraud against Defendants, the Court **DENIES** Defendants' Motion in regard to Monster's Unjust Enrichment claim.

### 6. Money Had and Received

Defendants argue that Monster's Money Had and Received claim fails because the money did not belong to Monster, and that "recovery would not be equitable under the circumstances of the case." (MSJ 22.) As discussed above, Defendants' argument that Monster is not entitled to the money because Highcorp loaned it to them has absolutely no merit. Defendants' argument that recovery would not be "equitable" is similarly unpersuasive.

"A cause of action for money had and received is stated if it is alleged that the defendant is indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff. The claim is viable wherever one person had received money which belongs to another, and which in equity and good conscience should be paid over the latter." *Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th 1439, 1454 (2013). "A claim for money had and received can be based upon money paid by mistake, money paid pursuant to a void contract, or a performance by one party of an

express contract." *Utility Audit Co. v. City of Los Angeles*, 112 Cal. App. 4th 950, 958 (2003).

Here, Monster has pled and produced evidence on all required elements of this claim: (1) Defendants received money from Monster that was intended to be used for Monster's benefit; (2) the money was not used for Monster's benefit; and (3) Defendants have not returned the funds to Monster.

Therefore, the Court **DENIES** Defendants' motion for summary judgment as to this claim.

### B. Defendants' Motion for Sanctions

Defendants argue that the Court should impose sanctions under Federal Rule of Civil Procedure 11 on the grounds that (1) Monster's counsel had not provided documentation that she had actual authority to bring this case on behalf of Monster; (2) Monster's counsel committed perjury; and (3) because "it is apparent that this case is nothing but a 'shakedown' to try and obtain money from Wall and Martinen." (MSJ 24.) Contrary to Defendants' claims, the Court finds that Monster has provided evidence to substantiate its claims. Further, Defendants have not provided any concrete evidence to show that Byzova committed perjury or has an intent to "shakedown" Defendants. Accordingly, the Court **DENIES** Defendants' Motion for Sanctions.

### C. Plaintiff's Motion to Dismiss Defendants' Counterclaim & Third-Party Defendant's Motion to Dismiss Third-Party Complaint

On May 1, 2017, Martinen filed a Counterclaim against Monster, Kozlov, and the other dismissed defendants, alleging Negligence. (Counterclaim; ECF No. 70.) Monster moved to dismiss Martinen's Counterclaim for Failure to State a Claim on April 20, 2018. (MTD; ECF No. 150.) Third-Party Defendant Maksim Kozlov also moved to dismiss Martinen's Third-Party Complaint for failure to state a claim, among other reasons. (ECF No. 153.) For the following reasons, the Court **GRANTS**

Monster's Motion to Dismiss Martinen's Counterclaim, and **GRANTS** Kozlov's Motion to Dismiss Martinen's Third-Party Complaint. (ECF Nos. 70, 153.)

Martinen alleges that Monster owed him a "duty to communicate to him that it was utilizing him as an escrow agent … and obtain his consent to act as escrow agent before utilizing his personal and account information." (Counterclaim ¶ 52.) Martinen does not cite to any law to support his claim. (*See id.*)

"The elements of a cause of action for negligence are: (1) a legal duty to use reasonable care; (2) breach of duty; and (3) proximate or legal cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998). Monster argues that it did not owe a duty of care to Martinen and that it could not have foreseen that the wire would have caused damages. (MTD 6.) Further, "it is also uncertain whether Martinen suffered injury … to the contrary, he was enriched by Monster's wire-transfer to him." (*Id.*) As Monster reasons, if a wire was sent to someone who was not the intended recipient, then the recipient could simply reject the wire. (*Id.*) The Court agrees.

Martinen's argument is baseless. Martinen's Third-Party Complaint against Kozlov for negligence and "Tort of Another" suffers from the same defects. As such, the Court **GRANTS** Monster's Motion to Dismiss Martinen's Counterclaim (ECF No. 150) and **GRANTS** Third-Party Defendant Kozlov's Motion to Dismiss Martinen's Third-Party Complaint, as to the claims against Kozlov. (ECF No. 153.)

*///*
*///*
*///*
*///*
*///*
*///*
*///*
*///*

## IV. CONCLUSION

For the reasons discussed above, the Court (1) **DENIES** Defendants' Joint Motion for Summary Judgment (ECF Nos. 113–116); (2) **GRANTS** Plaintiff's Motion to Dismiss Defendant's Counterclaim (ECF No. 150); and (3) **GRANTS** Third-Party Defendant's Motion to Dismiss the Third-Party Complaint for failure to state a claim. (ECF No. 153.)

**IT IS SO ORDERED.**

July 11, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**